

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| KATHY A. DOWDELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action |
| v. ) | File No. 4:03-cv-114-3 (COL) |
| ) | |
| AFLAC INCORPORATED, ) | |
| ) | |
| Defendant. ) | |

## AFLAC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

A.  Statement of Facts.

1.  AFLAC and Its Commitment to Equal Employment Opportunity.

American Family Life Assurance Company of Columbus ("AFLAC" or the "Company") insures approximately 40 million people worldwide. (Griffin Aff. at ¶ 2).[1] Through its sales force of more than 56,000 sales associates, AFLAC markets and sells a wide variety of health, life and supplemental insurance products. (Id.)

AFLAC has implemented numerous policies to ensure a workplace that is free from discrimination and provide all employees with an equal opportunity to succeed. More specifically, the AFLAC Employee Handbook expressly affirms the Company's commitment to equal employment opportunity and diversity among all employees in the

---

[1] The Affidavit of Deborah Griffin is attached to AFLAC's Motion for Summary Judgment as Exhibit A. Ms. Griffin's original Affidavit has been filed separately with the Court.

ATL01/11651016v4

Company's workplace. (Pl. Dep. at 115 and Ex. 19 at pp. 1.2, 2.4).[2] AFLAC's equal employment opportunity policies are also posted throughout the Company in break areas and on AFLAC's intranet, and all management and non-management employees are required to attend periodic training in which the Company reaffirms and reinforces such policies. (Griffin Aff. at ¶ 3; Pl. Dep. at 16-17). In addition, AFLAC has a Diversity Officer, Brenda Mullins, who has a staff dedicated to the Company's diversity efforts. (Tillman Dep. at 14).

As a result of these policies and practices and the Company's substantial efforts to promote the principles of equal employment opportunity, AFLAC is recognized as a national leader in workplace diversity issues. (Tillman Dep. at 14, 111-12, 118, 123). *Essence* Magazine recently recognized AFLAC as the #1 employer in the United States for African-American women. (Tillman Dep. at 118). AFLAC has also been named by *Fortune* Magazine as one of the Top 50 Companies for Minorities in each of the past two years and has been consistently recognized by *Fortune* as one of The 100 Best Companies to Work for in America. (Tillman Dep. at 118, 123).

    2.    <u>Plaintiff's Employment with AFLAC</u>.

Plaintiff was hired by AFLAC in April 1981 as a clerk in the Company's Agents Accounting Department. (Pl. Dep. at 39-40, 41). Approximately two years later, Plaintiff was promoted to the position of Accounts Payable Clerk in the Cash Accounting Department, where she processed checks, reconciled travel expense reports and assisted in the Company's payment of various state taxes. (Id. at 43-45). In September 1987,

---

[2] References to deposition citations are designated: (___ Dep. at ___). For the Court's convenience, cited portions of the depositions of Plaintiff, Audrey Tillman, Debbie Griffin, John Dalelio and Jason Goodroe are attached to AFLAC's Motion for Summary Judgment at Exhibits B, C, D, E and F, respectively.

ATL01/11651016v4

Plaintiff was again promoted to be a Budget and Cost Accounting Clerk in the Budget Department. (Id. at 45-46).

Plaintiff was promoted to her first position in the Marketing Department in March 1989, where she served as a liaison between that department and the Budget Department. (Pl. Dep. at 46-48). Although Plaintiff's job title changed from time-to-time over the next six years, her liaison duties between the Marketing and Budget Departments remained essentially the same. (Id. at 48-50).

Plaintiff was next promoted within the Marketing Department to the position of Director with AFLAC Life on December 1, 1996. (Pl. Dep. at 50-51). On January 1, 1998, Plaintiff became a Supervisor in the Marketing Department, where she supervised employees who were responsible for working with AFLAC's sales force to coordinate the enrollment of individuals who purchased AFLAC products and worked for companies that had fewer than 500 employees in more than one location in the country. (Id. at 53-57).

In February 2001, Plaintiff was promoted to the position of Key Account Coordinator in the Marketing Department. (Pl. Dep. at 61). From a functional standpoint, Plaintiff's work as a Key Account Coordinator was very similar to her work in her previous Supervisor position except that, as a Key Account Coordinator, she was responsible for the coordination of the enrollment of individuals who purchased AFLAC products and worked for companies that had more than 500 employees in more than one location in the country. (Id. at 62-63 and Ex. 3).

As described in more detail in the section below, on July 1, 2002, Plaintiff was promoted to Account Enrollment Executive ("AEE") in the newly-formed AIM Division

-- a position in which she continues to work today. (Pl. Dep. at 75-76, 140). As an AEE, Plaintiff has continued to coordinate the enrollment of individuals who work for employers that have more than 500 employees working in multiple locations around the country. (Id. at 75-76). Unlike her more-limited responsibilities as a Key Account Coordinator, however, Plaintiff is also involved in billing, invoicing and servicing policies for those accounts. (Id.)

> 3. The Creation of the AIM Division and the Selection of Plaintiff and Other Employees to Fill Account Enrollment Executive and Senior Account Enrollment Executive Positions.

Prior to the creation of the AIM Division in 2002, three separate AFLAC departments -- Marketing, Client Services and Administrative Services -- were responsible for various functions related to setting up and servicing new accounts that had over 500 employees working in multiple locations around the country. (Griffin Aff. at ¶ 5; Griffin Dep. at 22-23; Pl. Dep. at 76-78). One of the purposes for creating the AIM Division was to extract and combine certain functions from each of these departments and consolidate them in one area in order to streamline internal operations and to more effectively and efficiently service the Company's large accounts, especially at the front-end, account-implementation stage. (Id.)

The creation of the AIM Division had a substantial impact on personnel in each of the three affected departments. Of particular importance in this case, the creation of the AIM Division had the effect of eliminating a number of positions of individuals who worked with AFLAC's larger accounts, including Account Executives in the Administrative Services and Client Services Departments and Key Account Coordinators in the Marketing Department. (Griffin Aff. at ¶ 6; Griffin Dep. at 51-52).

ATL01/11651016v4

In order to help fill the new positions in the AIM Division and minimize the number of employees who were at risk for losing their jobs in the restructuring, AFLAC permitted all employees whose jobs were affected in the Client Services, Administrative Services and Marketing Departments to apply for promotions to AEE and Senior Account Enrollment Executive ("SAEE") positions in the AIM Division. (Griffin Aff. at ¶ 7; Griffin Dep. at 51-52, 71). AFLAC also waived nearly all of the Company's eligibility requirements for affected employees who wished to apply for the AEE and SAEE positions, including a one-year "time in position" expectation that would have otherwise required all applicants for the positions to have worked for at least one year in their previous positions.[3] (Griffin Aff. at ¶ 7; Griffin Dep. at 54-55).

On May 31, 2002, Debbie Griffin, who had been selected by AFLAC to manage the New Account Set-Up Operations of the AIM Division, sent an e-mail to all employees in the Client Services, Administrative Services and Marketing Departments whose jobs were to be impacted as a consequence of the creation of the AIM Division. (Pl. Dep. at Ex. 20; Griffin Aff. at ¶ 8; Griffin Dep. at 47-49, 51-52 and Ex. 8). As Griffin explained in her e-mail, all affected employees were eligible to apply for promotion to one of the newly-created AEE and SAEE positions in the AIM Division. (Pl. Dep. at 156-57, 159 and Ex. 20; Griffin Aff. at ¶ 8; Griffin Dep. at Ex. 8). As Griffin further explained, the employees who were selected for promotion to AEE positions would also be eligible for consideration for one of two SAEE positions. (Griffin Aff. at ¶ 8; Griffin Dep. at Ex. 8). Finally, Griffin provided instructions on how to apply for the

---

[3] The only condition that an applicant was required to meet in order to be considered for the AEE position was a rating of at least 3 out of a possible 5 in each of five "core competencies" in each of the employee's two most-recent performance appraisals. (Griffin Dep. at 43-45, 73-74).

AEE positions and notified employees that, if they chose to submit an application for one of the AEE jobs, they would be scheduled for interviews with an interview panel comprised of officers with the Company. (Griffin Dep. at Ex. 8).

In response to Griffin's May 31 e-mail, Plaintiff and 14 other employees applied for promotion to the AEE positions. (Griffin Aff. at ¶ 9; Griffin Dep. at 48-51). Each of the applicants was then scheduled for an interview with a four-person interview panel comprised of Griffin, John Dalelio, a third member of AFLAC's management team and a representative from AFLAC's Employee Relations Department. (Griffin Aff. at ¶ 9; Griffin Dep. at 59-60, 71-72).[4]

The interviews of each of the applicants occurred between June 14, 2002 and June 20, 2002. (Griffin Aff. at ¶ 10). Each interview followed precisely the same format. (Griffin Aff. at ¶ 10; Dalelio Dep. at 24). In particular, each applicant was required to answer the same nine questions -- three from each of the three members of management on the interview panel. (Griffin Aff. at ¶ 10). In addition, each applicant was provided with an opportunity to give a short presentation to the panel on a topic of his or her choice. (Id.)

Immediately following the conclusion of all of the interviews, the seven members of the interview panels, including the two Employee Relations Department representatives who had attended the interviews, met to discuss the applicants for the AEE and SAEE positions. (Griffin Aff. at ¶ 11; Griffin Dep. at 78; Dalelio Dep. at 24-25). Also present at the meeting were Janet Baker, Vice President, AIM Division, and

---

[4] Although each interview panel included a representative from the Employee Relations Department, that person's function was to ensure the consistency and fairness of the process, not to participate in the interview or evaluation of the candidate. (Griffin Aff. at ¶ 9; Griffin Dep. at 83).

Blake Voltz, Second Vice President, Client Services. (Id.) Each applicant was individually discussed by the interview panelists, and the management representatives on each interview panel were asked by Griffin to state whether he or she recommended the applicant for promotion to an AEE position. (Griffin Aff. at ¶ 12; Griffin Dep. at 79; Dalelio Dep. at 26; Goodroe Dep. at 26). If the two management representatives other than Griffin on the interview panel agreed on whether an applicant should or should not be promoted, Griffin did not participate in the selection decision. (Griffin Aff. at ¶ 12; Griffin Dep. at 79-80; Dalelio Dep. at 26). If the two management representatives other than Griffin on the interview panel disagreed about whether an applicant should be promoted, however, Griffin would decide whether to promote the applicant or not.[5] (Id.)

Once all of the applicants were selected for promotion to the AEE positions, each was again discussed and considered by the interview panelists for promotion to the two SAEE positions. (Griffin Aff. at ¶ 13; Dalelio Dep. at 27-28). The SAEE positions were filled by consensus among the interview panelists. (Id.)

When the interview panelists met to select individuals for promotions to the AEE positions, Jason Goodroe, one of the members of Plaintiff's interview panel, did not recommend Plaintiff for promotion. (Griffin Aff. at ¶ 14; Goodroe Dep. at 27; Griffin Dep. at 81). In particular, Goodroe believed that Plaintiff's presentation was very weak

---

[5]   Griffin's decision not to participate in the promotion decisions for the AEE positions unless there was disagreement between the two other management representatives on the interview panel was based upon her desire to avoid the appearance of bias or impartiality. (Griffin Dep. at 79-80). More specifically, because Griffin had previously managed the Key Account Coordinators in the Marketing Department, she did not want applicants from the Administrative Services and Client Services Departments to believe that she was favoring her former employees over them in the selections of the applicants to fill the new positions that would be reporting to her in the AIM Division. (Id.)

and that she essentially read from her notes. (Goodroe Dep. at 27; Griffin Dep. at 81). Plaintiff was selected for promotion to an AEE position, however, based upon Dalelio's favorable recommendation and Griffin's concurrence with Dalelio's recommendation. (Griffin Aff. at ¶ 14; Griffin Dep. at 80, 81).

A consensus of the interview panelists selected Plaintiff and eight other employees from the Client Services, Administrative Services and Marketing Departments for promotion to nine of the AEE positions. (Griffin Aff. at ¶ 15; Griffin Dep. at 80-81).[6] The selections were based upon the applicants' performance in the interviews and, more particularly, their performance in answering the interview questions and giving their presentations. (Griffin Aff. at ¶ 15).

In addition, Taletha Lansdon and David Schuetz were selected by a consensus of the interview panelists for promotion to the two SAEE positions. (Griffin Aff. at ¶ 16; Dalelio Dep. at 28, 29). These selections were likewise based upon Lansdon's and Schuetz' performance in answering the interview questions and giving their presentations. (Griffin Aff. at ¶ 16). Plaintiff was not recommended by any of the interview panel members for the SAEE job. (Id.)

B.   Statement of the Case.

On or about October 11, 2002, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in which she alleged that she had been denied a promotion to a SAEE position on account of her race and age. (Pl. Dep. at 172 and Ex. 23). Following its investigation into her charge, the EEOC issued a

---

[6]   Two of the applicants, Wanda Sweeney and Chris Webb, were disqualified for consideration because they had not received a score of 3 or higher in each of the five competencies reviewed in their two most recent performance appraisals. (Griffin Dep. at 72-73).

determination finding that there was insufficient evidence to support any conclusion of discrimination and dismissing Plaintiff's charge. (Pl. Dep. at 201 and Ex. 25). Plaintiff subsequently filed the instant action, in which she again alleged that she was not promoted to a SAEE position in July 2002 on account of her race and age in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.

## II. ARGUMENT

### A. Summary Judgment Is Properly Granted When There Is No Genuine Issue of Material Fact and the Moving Party Is Entitled to Judgment as a Matter of Law.

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted where the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the Supreme Court stated that the

> summary judgment procedure is properly regarded not as a disfavored procedural short cut, but rather as an integral part of the federal rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' [citation omitted]

*Id.* at 327; *see also Lordmann Enters., Inc., v. Equicor Inc.*, 32 F.3d 1529, 1532 (11th Cir. 1994); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990); *Pace v. Southern Ry. Sys.*, 701 F.2d 1383, 1390-1392 (11th Cir. 1983.) Applying this standard, courts have not hesitated to dismiss employment discrimination claims. *See Wu v. Thomas*, 847 F.2d 1480 (11th Cir. 1988); *Hunter v. City of Warner Robins, Georgia*, 842 F. Supp. 1460 (M.D. Ga. 1994).

Here, Plaintiff cannot establish essential elements of her claims as a matter of law. Thus, as the Supreme Court held in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986):

> [t]here is no issue for trial unless there is sufficient
> evidence favoring the nonmoving party for a jury to return
> a verdict for the party. If the evidence is *merely colorable*
> or is *not significantly probative*, summary judgment may be
> granted. [citation omitted]
>
> * * *
>
> The mere existence of a scintilla of evidence in support of
> the [non-moving party's] position will be insufficient; there
> must be evidence on which the jury could reasonably find
> for the [non-moving party].

*Id.* at 252. (emphasis added)

    B.    <u>There Is No Evidence that Plaintiff's Race or Age Played Any Role in AFLAC's Decision Not to Promote Her to the SAEE Position.</u>

In 1993, the Supreme Court reaffirmed the analytical framework within which courts should examine the evidence in cases, such as this, where a plaintiff alleges disparate treatment. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993); *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711 (1983); *Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this analysis, a plaintiff has the initial burden of establishing by a preponderance of the evidence a *prima facie* case of discrimination. *Hicks*, 509 U.S. at 506; *Burdine*, 450 U.S. at 252-53. If the plaintiff cannot establish all of the elements necessary to prove a *prima facie* case, summary judgment should be granted to the defendant. *Pace v. Southern Ry. System*, 701 F.2d 1383, 1390 (11th Cir. 1983).

The establishment of a *prima facie* case creates a rebuttable presumption of discrimination. *Hicks*, 509 U.S. at 506; *Burdine*, 450 U.S. at 254. The burden of production then shifts to the defendant to introduce evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *Hicks*, 509 U.S. at 506-07; *Burdine*, 450 U.S. at 254. However, the defendant is not required to persuade a court that

it was actually motivated by the reason advanced. *Burdine*, 450 U.S. at 254; *Perryman v. Johnson Prods Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983). Rather, the defendant's burden is simply one of "producing an explanation to rebut the *prima facie* case." *Hicks*, 509 U.S. at 506-07. This burden is "exceedingly light." *Conner v. Fort Gordon Bus Co.*, 761 F.2d 1495, 1499 (11th Cir. 1985).

If the defendant introduces evidence of a legitimate, nondiscriminatory reason for its actions, any presumption of discrimination raised through the establishment of a *prima facie* case is rebutted and "drops from the case." *Hicks*, 509 U.S. at 507 (citing *Burdine*, 450 U.S. at 255 n.10). To avoid summary judgment, the plaintiff must then prove that the reason proffered by the defendant is a pretext for illegal discrimination. *Hicks*, 509 U.S. at 507; *MacPherson v. University of Montevallo,* 922 F.2d 766, 774 (11th Cir. 1991); *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989); *Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988). The plaintiff's burden of proof in this regard is substantial:

> The defendant may be entitled to summary judgment if he produces evidence of a legitimate nondiscriminatory reason for the employment action. To survive summary judgment the plaintiff must then present *concrete evidence in the form of specific facts* which shows that the defendant's proffered reason is merely pretext. *Mere conclusory allegations and assertions will not suffice.*

*Earley*, 907 F.2d at 1081 (emphasis added); *accord Young*, 840 F.2d at 829 (conclusory allegations of discrimination are not sufficient to raise an inference of pretext or intentional discrimination where the employer has met its burden of demonstrating a legitimate, nondiscriminatory reason for the employment action at issue).

The plaintiff always bears the ultimate burden of proving discriminatory treatment by a preponderance of the evidence. *Hicks*, 509 U.S. at 507; *Earley*, 907 F.2d at 1081.

The "plaintiff must prove that the defendant acted with discriminatory purpose." *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984), *reh'g denied*, 747 F.2d 710 (11th Cir. 1984). As the Eleventh Circuit stated in *Nix*:

> The *McDonnell Douglas/Burdine* framework is a valuable tool for analyzing evidence in cases involving alleged disparate treatment. But that framework is only a tool. The 'ultimate question' in a disparate treatment case is not whether the plaintiff established a *prima facie* case or demonstrated pretext, but 'whether the defendant intentionally discriminated against the plaintiff.' [citation omitted]

*Id.* at 1184 (quoting *Aikens*, 460 U.S. at 714-15).

### 1. Plaintiff Cannot Establish a *Prima Facia* Case of Race or Age Discrimination.

In order to establish a *prima facia* case of race and age discrimination, Plaintiff must prove that (1) she is a member of a protected class; (2) she was qualified for and applied for the SAEE position; (3) she was not selected for the position despite her qualifications; and (4) a non-member of the protected class of equal or lesser qualifications was selected for the SAEE job. *See Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001); *A.M. Alexander v. Fulton County*, 207 F.3d 1303, 1339 (11th Cir. 2000); *Taylor v. Runyon*, 175 F.3d 861, 866 (11th Cir. 1999).

Although for purposes of this motion AFLAC will concede that Plaintiff can establish that she is a member of a protected class, that she applied for the SAEE position, and that she was not selected for the job, Plaintiff cannot establish a *prima facie* case of discrimination because she cannot prove that either of the two individuals selected for the SAEE positions, Taletha Lansdon and David Schuetz, had equal or lesser qualifications than she. In this regard, it is undisputed that the only qualifications considered by the interview panelists in making the selection decisions for the SAEE positions were the applicants' relative performance in answering the interview questions and in their presentations. (Griffin Aff. at ¶ 16). It is also undisputed that Lansdon and

Schuetz were recommended for the SAEE jobs by a consensus of the interview panel, and that Plaintiff was not recommended for the SAEE job by any of the panel members. (Id.) Thus, there is no evidence in the record from which Plaintiff could argue that Lansdon or Schuetz had equal or lesser qualifications than she and, as a consequence, she cannot establish a *prima facia* case of race and age discrimination as a matter of law. *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1433 (11th Cir. 1998) (summary judgment granted in favor of the employer where the plaintiff failed to prove one of the elements of a *prima facia* case); *Wu v. Thomas*, 847 F.2d 1480, 1484 (11th Cir. 1988) (summary judgment granted for the employer where the plaintiff failed to show that she was qualified for the position and that an equal or less qualified non-minority was promoted).

        2.      <u>AFLAC Has Asserted a Legitimate, Non-Discriminatory and Non-Pretextual Reason for Its Decision Not to Promote Plaintiff.</u>

Even if Plaintiff could somehow establish a *prima facia* case of race or age discrimination, summary judgment is still appropriate because AFLAC had a legitimate, non-discriminatory reason for its decision not to promote her to the SAEE position. In particular, as discussed above, Plaintiff was not recommended by any of the members of the interview panel, and ultimately not selected for one of the two SAEE positions, based upon her interview and presentation to the panel. (Griffin Aff. at ¶ 16).

Moreover, there is no evidence in the record to suggest that the panel's decision not to promote Plaintiff to the SAEE position was a pretext for race or age discrimination. To the contrary, it is undisputed that Plaintiff was treated the same as all of the other applicants for the AEE and SAEE positions in the promotion process -- that is, all employees in the Client Services, Administrative Services and Marketing Departments whose jobs were affected by the creation of the AIM Division and the reorganization of functions were permitted to apply for promotions to the AEE and SAEE positions

ATL01/11651016v4

(Griffin Aff. at ¶¶ 6-8; Griffin Dep. at 51-52, 71 and Ex. 8); all applicants for the positions were required to appear before an interview panel comprised of three management employees and a member of AFLAC's Employee Relations Department (Griffin Aff. at ¶ 9; Griffin Dep. at 59-60, 71-72); and all applicants for the positions were required to answer the same nine questions -- three questions from each of the three members of management on the panel -- and give a presentation on a topic of their choice (Griffin Aff. at ¶ 10; Dalelio Dep. at 24). Likewise, Plaintiff and all other applicants were discussed by all of the interview panelists at the conclusion of the interviews, and the promotion decisions were made by a consensus of the group. (Griffin Aff. at ¶¶ 13, 16; Dalelio Dep. 27-29). Finally, representatives of AFLAC's Employee Relations Department attended all of the interviews as well as the meeting in which the promotion decisions were made to ensure that the process was fair to all applicants. (Griffin Aff. at ¶ 9; Griffin Dep. at 83).

It is also undisputed that the same decisionmakers that did not select Plaintiff for promotion to one of the two SAEE positions did, in fact, select Plaintiff for a promotion to an AEE position in the AIM Division. (Griffin Aff. at ¶ 14). The panel's selection of Plaintiff for one of the AEE positions demonstrates the absence of any discriminatory intent on the basis of Plaintiff's race or age.

Finally, the fact that the selection decision at issue was made by a panel of individuals, and not a single decisionmaker, is compelling evidence that Plaintiff's race and age played no part in the decision-making process. Indeed, the Eleventh Circuit has consistently held that where, as here, a group or panel of individuals acts as the decisionmaker, a plaintiff must prove that the group acted with an unlawful motive. *See Dixon v. Burke County, Ga.*, 303 F.3d 1271, 1276 (11th Cir. 2002) (finding no liability where individual alleged to have discriminated against the plaintiff could not be charged with tainting the votes of 12 grand jurors who made the decision to fill the vacant position on the County's Board of Education); *Matthews v. Columbia County*, 294 F.3d

- 14 -

1294, 1297 (11th Cir. 2002) (refusing to impute the alleged unlawful motive of one Commissioner to the entire Commission that made the decision to eliminate the plaintiff's job); *Mason v. Village of El Portal*, 240 F.3d 1337, 1340 (11th Cir. 2001) (granting summary judgment to a municipality where the plaintiff had only shown evidence that one member of a three-member majority voted to fire plaintiff for discriminatory reasons).

Given the undisputed evidence in the record, it is therefore not surprising that, in a written statement that she provided to AFLAC in connection with the Company's investigation into an anonymous complaint about the selection process for the AEE and SAEE positions, Plaintiff admitted that "I think as far as I am concerned, I think that I was treated fairly, . . . ." (Pl. Dep. at Ex. 22). Thus, because Plaintiff cannot establish that the decision not to promote her to the SAEE position was a pretext for unlawful race or age discrimination, her claims should be dismissed. *See Denney*, 247 F.3d at 1183 (affirming the district court's summary judgment order in favor of the employer where the plaintiff failed to establish that the reasons asserted by the employer for not awarding him a promotion were a pretext for discrimination); *Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (employer was entitled to summary judgment where the plaintiff did not offer sufficient evidence to create a genuine issue of material fact regarding whether the employer's articulated reasons were pretextual); *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1334 (11th Cir. 1998) (employee failed to show that his employer's proffered reasons for not considering him for promotion were a pretext for race or national origin discrimination).

## III. CONCLUSION

For the reasons stated herein, AFLAC respectfully requests that its Motion for Summary Judgment be granted and that Plaintiff's Complaint be dismissed in its entirety, with prejudice.

ATL01/11651016v4

Respectfully submitted this 18th day of June, 2004.

            ALSTON & BIRD LLP

By: _/s/ R. Steve Ensor_
    R. Steve Ensor
    Georgia Bar No. 249360
    Job J. Milfort
    Georgia Bar No. 515915
    1201 West Peachtree Street
    Atlanta, Georgia 30309-3424
    (404) 881-7000

OF COUNSEL:

George Boyd
Georgia Bar No. 072485
AFLAC
1932 Wynnton Road
Columbus, Georgia 31999
(706) 660-7319

ATTORNEYS FOR AFLAC

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| KATHY A. DOWDELL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AFLAC INCORPORATED, )<br>)<br>Defendant. )<br>_____) | Civil Action<br>File No. 4:03-cv-114-3 (COL) |

## CERTIFICATE OF SERVICE

This is to certify that I have this date served a copy of AFLAC's Memorandum of Law in Support of Its Motion for Summary Judgment by depositing a true and correct copy of same in the United States mail with adequate first-class postage affixed thereon, addressed as follows:

> Ms. Karen J. Malachi
> Buckeye Towers
> 3300 Buckeye Road
> Suite 444
> Atlanta, Georgia 30341

This 18th day of June, 2004.

By: _/s/ R. Steve Ensor_
R. Steve Ensor