

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| KATHY A. DOWDELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action |
| v. ) | File No. 4:03-cv-114-3 (COL) |
| ) | |
| AFLAC INCORPORATED, ) | |
| ) | |
| Defendant. ) | |

NOTICE OF FILING THE ORIGINAL
AFFIDAVIT OF DEBORAH GRIFFIN

COMES NOW Defendant AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS and files the attached original Affidavit of Deborah Griffin in the above-referenced case.

Respectfully submitted this 18th day of June, 2004.

ALSTON & BIRD LLP

By: _____
R. Steve Ensor
Georgia Bar No. 249360
Job J. Milfort
Georgia Bar No. 515915
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
(404) 881-7000

ATL01/11678043v1

OF COUNSEL:

George Boyd
Georgia Bar No. 072485
AFLAC
1932 Wynnton Road
Columbus, Georgia 31999
(706) 660-7319

ATTORNEYS FOR AFLAC

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA

| | |
|---|---|
| KATHY A. DOWDELL,<br><br>　　　　Plaintiff,<br><br>v.<br><br>AFLAC INCORPORATED,<br><br>　　　　Defendant. | Civil Action<br>File No. 4:03-cv-114-3 (COL) |

### AFFIDAVIT OF DEBORAH GRIFFIN

My name is Deborah Griffin. I am competent to give this Affidavit and I have personal knowledge of each of the facts stated herein. I give this Affidavit freely and voluntarily in connection with the above-captioned lawsuit.

1.

I am currently employed by American Family Life Assurance Company of Columbus ("AFLAC" or the "Company") in the position of Second Vice President, New Account Setup Operations in the AIM Division. I have worked for AFLAC for approximately 25 years.

2.

AFLAC insures approximately 40 million people worldwide. Through the Company's sales force of more than 56,000 sales associates, AFLAC markets and sells a wide variety of health, life and supplemental insurance products.

ATL01/11677248v1

- 2 -

3.

AFLAC's equal employment opportunity ("EEO") policies are posted throughout the Company in break areas and on AFLAC's intra-net. All management and non-management employees are required to attend periodic training in which the Company reinforces its EEO and harassment policies and diversity programs.

4.

In May 2002, I was promoted to Senior Manager, New Account Setup Operations in the AIM Division. At that time, the AIM Division was a new department at AFLAC.

5.

Prior to the creation of the AIM Division, three different AFLAC departments, Marketing, Client Services and Administrative Services, were responsible for various functions related to setting up and servicing new accounts that had over 500 employees working in multiple locations around the country. One of the purposes for creating the AIM Division was to combine certain functions from each of those departments and to consolidate them in one area in order to streamline internal operations and to more effectively and efficiently service AFLAC's large accounts, especially at the front-end, account-implementation stage.

6.

The creation of the AIM Division had the effect of eliminating a number of positions of employees who worked with AFLAC's larger accounts in the Marketing, Client Services and Administrative Services Departments. The impacted employees included Account Executives in the Administrative Services and Client Services Departments and the Key Account Coordinators in the Marketing Department.

7.

In order to fill new positions in the AIM Division and minimize the number of employees who might have lost their jobs in the restructuring, AFLAC permitted all employees whose jobs were affected in the Client Services, Administrative Services and Marketing Departments to apply for promotions to the positions of Account Enrollment Executive ("AEE") and Senior Account Enrollment Executive ("SAEE") in the AIM Division. AFLAC also waived nearly all of the Company's eligibility requirements for affected employees who wished to apply for the AEE and SAEE positions, including a one-year "time in position" expectation that would have otherwise required all applicants for the positions to have worked for at least one year in their previous positions.

8.

On May 31, 2002, I sent an e-mail to all employees in the Client Services, Administrative Services and Marketing Departments whose jobs were to be impacted by the creation of the AIM Division, explaining AFLAC's decision to permit them to apply for promotion to the AEE and SAEE positions in the AIM Division. As stated in my e-mail, any employee who was selected for promotion to an AEE position would also be eligible for consideration for one of the two SAEE positions.

9.

In response to my May 31 e-mail, Kathy Dowdell and 14 other employees applied for promotion to the AEE positions. Each of the applicants was then scheduled for an interview with a four-person interview panel comprised of myself, John Dalelio, a third member of AFLAC's management team and a representative from the Company's Employee Relations Department. Although John Dalelio and I sat in on each of the 15

interviews, the third member of AFLAC's management team who sat in on the interviews rotated among Karl Douglas, Anne Hayes Pearce and Jason Goodroe. Although each interview panel included a representative from the Employee Relations Department, that person's responsibility was to ensure the consistency and fairness of the process, not to participate in the interview or evaluation of the applicant.

10.

The interviews of all applicants for the AEE and SAEE positions occurred between June 14, 2002, and June 20, 2002. Each interview followed the same format. More specifically, each applicant was required to answer the same nine questions, three from each of the three members of management on the interview panels. Each applicant was also provided with an opportunity to give a short presentation to the panel on a topic of his or her choice.

11.

Immediately following the conclusion of all of the interviews, the seven members of the interview panels, including the two Employee Relations Department representatives who had attended the interviews, met to discuss the applicants for the AEE and SAEE positions. Also present at the meeting were Janet Baker, Vice President, AIM Division, and Blake Voltz, Second Vice President, Client Services.

12.

At the meeting following the interview process, each applicant was individually discussed by the interview panelists. I then asked the management representatives on each interview panel to state whether he or she recommended the applicant for promotion to an AEE position. If the two management representatives other than me on the

- 5 -

interview panel agreed on whether an applicant should or should not be promoted, I did not participate in the selection decision. However, if the two management representatives on the interview panel disagreed in their recommendation about whether an applicant should be promoted, I decided whether to promote the applicant or not.

13.

Once all of the applicants were selected for promotion to the AEE positions, each of the individuals selected was again discussed and considered by the panel for promotion to the two SAEE positions. The two SAEE positions were filled by consensus among the interview panelists.

14.

When Kathy Dowdell was discussed by the panel for promotion to the AEE position, Jason Goodroe, one of the members of her interview panel, did not recommend Ms. Dowdell for promotion. However, Mr. Dalelio favored Ms. Dowdell for a promotion. I concurred with Mr. Dalelio and, as a consequence, Ms. Dowdell received one of the promotions to an AEE position.

15.

A consensus of the interview panelists selected Ms. Dowell and eight other employees for promotion to nine of the AEE positions in the new AIM Division. These selections were based upon the applicants' performance in the interviews and, more particularly, their performance in answering the interview questions and giving their presentations.

16.

A consensus of the interview panelists selected Taletha Lansdon and David Schuetz for promotion to the two SAEE positions in the AIM Division. These selections were based upon Ms. Lansdon's and Mr. Schuetz' superior performance in answering the interview questions and giving their presentations. Ms. Dowdell was not recommended by any of the interview panel members for promotion to a SAEE job.

17.

At no time did Ms. Dowdell's race or age play any part in either the decision to promote her to an AEE position or the decision not to promote her to a SAEE position.

FURTHER AFFIANT SAYETH NOT.

_____
DEBORAH GRIFFIN

Sworn to and subscribed
before me this _17TH_ day
of _June_, 20_04_

_____
Notary Public

My Commission Expires:
My Commission Expires November 17th, 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| KATHY A. DOWDELL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AFLAC INCORPORATED, )<br>)<br>Defendant. )<br>_____) | Civil Action<br>File No. 4:03-cv-114-3 (COL) |

## CERTIFICATE OF SERVICE

This is to certify that I have this date served a copy of Notice of Filing the Original Affidavit of Deborah Griffin by depositing a true and correct copy of same in the United States mail with adequate first-class postage affixed thereon, addressed as follows:

> Ms. Karen J. Malachi
> Buckeye Towers
> 3300 Buckeye Road
> Suite 444
> Atlanta, Georgia 30341

This 18th day of June, 2004.

By: _____
R. Steve Ensor